**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

PACE PROPERTIES, LLC,

      Plaintiff,

v.                                    Case No. 3:08cv345/MCR/EMT

EXCELSIOR CONSTRUCTION, INC.,

      Defendant.

                                    /

## **O R D E R**

This lawsuit stems from a construction contract dispute between the Plaintiff, Pace Properties, LLC ("Pace"), a land developer; and the Defendant, Excelsior Construction, Inc. ("ECI"), a general contractor. Pace has sued ECI for discharge of a claim of lien, fraudulent claim of lien, slander of title, and breach of contract.[1] ECI has filed a counterclaim for foreclosure on the lien, breach of contract, and unjust enrichment. Presently before the court are ECI's motion for summary judgment on all claims and counterclaims (doc. 63); and Pace's motion for partial summary judgment on its lien-related claims, but not its breach of contract claim (doc. 201). Both parties have filed responses (docs. 102, 223).[2] For the reasons given below, the court DENIES ECI's motion and GRANTS Pace's motion.

**Background**

Pace is a Florida corporation; ECI is an Alabama corporation. In May 2006, Pace contracted with ECI to perform construction work on property owned by Pace in Santa Rosa County, Florida, including surveying, excavation, clearing, grading and underground utilities. The contract obligated Pace to either obtain property insurance or notify ECI it had

---

[1] ECI placed a lien upon Pace's property because, according to ECI, Pace did not fully pay ECI for services and materials ECI furnished to the property.

[2] ECI also filed a reply (doc. 111), to which Pace filed a rebuttal (doc. 134).

not done so, in which case ECI could obtain insurance at Pace's expense. Furthermore, the contract provided that if ECI was damaged by Pace's failure to obtain the insurance, Pace would be liable to ECI for the damages. Pace neither obtained the insurance nor notified ECI of its failure to do so.

On April 5, 2008, a storm washed out a portion of a retention pond constructed by ECI under the contract, causing damage to the pond and the surrounding wetlands. ECI began to repair the pond, and requested payment for the repairs. Pace withheld payment, claiming that ECI was contractually obligated to repair the pond and the adjacent wetlands at its own expense because, according to Pace, the damage was caused by ECI's defective work. For its part, ECI claimed that Pace was contractually obligated to pay for the repairs, because Pace failed to purchase property insurance that, according to ECI, would have covered the cost of repairs. ECI stopped work on or about May 23, 2008.

ECI alleges it furnished labor, services and materials to the project having a value of $4,775,783.71, of which $1,001,619,94 remains unpaid. As a result, on July 7, 2008, ECI filed a lien against Pace's property in the Circuit Court for Santa Rosa County. In August 2008, Pace filed a complaint in the Circuit Court for Santa Rosa County seeking to discharge the lien and alleging breach of contract; ECI filed its answer and counterclaim, and removed the case to this court. On August 28, 2008, Pace filed a motion to remand; the court denied Pace's motion on November 18, 2008. On April 2, 2009, ECI filed a motion for summary judgment. On October 16, 2009, Pace filed motion for partial summary judgment on its claims related to the lien. On November 16, 2009, the court heard oral argument on Pace's motion.

**Discussion**

A motion for summary judgment should be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007). The court must avoid weighing contradictory evidence or making credibility determinations, *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000), and must draw all reasonable inferences in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no dispute that Florida law governs all of the claims in this case.

<u>Breach of Contract Claims</u>

Under Florida law, the elements of breach of contract are: (1) a valid contract; (2) a material breach; and (3) damages. *See Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). The interpretation of an unambiguous contract is a matter of law.[3] *See Lawyer Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995). A court must construe a contract in a reasonable matter, in accord with its plain language. *See Ospina-Baraya v. Heiligers*, 909 So. 2d 465, 472 (Fla. 4th DCA 2005). Furthermore, the court should interpret the agreement as a whole, giving effect to all of its provisions. *Id.*

In this case, the issue of breach turns on which party was obligated to pay for repairs to the damaged retention pond. ECI argues that Pace failed to purchase property insurance in accordance with their contract, which would have covered the cost of repairs; thus, according to ECI, Pace was obligated to pay for the repairs, even if the damage was caused by ECI's own defective work.[4] Subparagraph 11.3.1 of the contract required Pace to purchase and maintain property insurance in the full amount of the contract price. (*See* doc. 103-1, at 37). Pursuant to Subparagraph 11.3.1.2, Pace agreed to give notice to ECI if it did not do so, and to bear all reasonable costs attributable to its failure to either purchase insurance or notify ECI of its decision not to purchase insurance. (*See* doc. 103-1, at 37). However, the risks for which Pace was required to purchase insurance coverage were limited by Subparagraph 11.3.1:

> Property insurance shall be on an all-risk policy form and shall insure against the perils of fire and extended coverage and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, falsework, temporary buildings and debris removal including demolition . . . *Coverage for other perils shall not be required unless otherwise provided in the Contract Documents.*

---

[3] Neither party has suggested the contract is ambiguous.

[4] ECI does not concede that its work was defective.

Case No: 3:08cv345/MCR/EMT

(*See* doc. 103-1, at 37) (emphasis added). ECI argues that because Pace never purchased a policy, the court should broadly construe this language to cover all risks, including ECI's own defective work. ECI's position is contrary to the plain language of Subparagraph 11.3.1.1, which specifically identified the risks for which coverage was required under the contract and expressly excluded all other risks, unless otherwise required under another provision of the contract. *See Ospina-Baraya*, 909 So. 2d at 472 (stating unambiguous language should be given its plain, everyday meaning).

In addition to flying in the face of the plain language of Subparagraph 11.3.1.1, ECI's suggestion that Pace was required to procure insurance for ECI's own defective work is irreconcilable with the remainder of the contract as well. Subparagraph 7.39.4 of the contract, titled "Guarantee and Warranty", states: "Contractor shall repair, at Contractor's expense and at the convenience, any defects in its workmanship or materials, including without limitation consequential damages." (*See* doc. 103-1, at 10). If, as ECI argues, Pace were the insurer of ECI's defective work, Subparagraph 7.39.4 would have no effect. *See Ospina-Baraya*, 909 So. 2d at 472 (stating that each provision of a contract should be given effect). Similarly, Subparagraph 12.2.2 of the contract, titled "Correction of Work", states: "The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether observed before or after Substantial Completion, and whether or not fabricated, installed or completed. The Contractor shall bear the costs of correcting such rejected Work." (*See* doc. 103-1, at 38). Were the court to accept ECI's position, this provision's requirement that ECI correct non-conforming work would be rendered meaningless as well.

In *Chelm Mgmt. Co. v. Wieland-Davco Corp.*, 23 Fed. Appx. 430 (6th Cir. 2001), a contractor sued an owner for failure to pay amounts due on a construction contract.[5] *Id.* at 431. The owner counterclaimed for breach of warranty. *Id.* The trial court granted

---

[5] ECI argues that the court should not consider *Chelm* because it is unpublished. The Sixth Circuit, however, has itself cited to its own unpublished opinions. *See McCloud v. Testa*, 97 F.3d 1536, 1555 (6th Cir. 1996) (citing *Hanshaw v. Board of Educ. of Carter County, Ky.*, 943 F.2d 51, 1991 WL 170897 (6th Cir. 1991) (unpublished per curiam)). While the Sixth Circuit's *Chelm* opinion is not binding authority on this court, the case is persuasive and also notably consistent with Florida law.

summary judgment to the contractor on the ground that the owner's failure to purchase property insurance, as required by the contract, precluded recovery. *Id.* The Sixth Circuit reversed, noting first that it would be absurd to interpret an "all risk" policy to actually cover "any loss in the whole world."[6] Additionally, the court drew a distinction between coverage for damage resulting from defective design, workmanship or material, and coverage for the defective design, workmanship or material itself. In this case, the insurance provision makes no mention at all of coverage for defective work, so there is no need to draw the distinction made by the court in *Chelm*.[7] Finally, the *Chelm* court noted that the contract provisions creating warranty liabilities for the contractor were inconsistent with an interpretation of the contract requiring the owner to insure against the contractor's defective work. The Sixth Circuit's analysis is persuasive and consistent with the contract principles of Florida law on which this court relies. ECI is not entitled to judgment as a matter of law on its breach of contract claim.[8]

Lien Claims

Under Florida law, a lien is fraudulent if the lienor has willfully exaggerated the amount, willfully included a claim for work not performed or materials not furnished, or compiled the claim with such willful or gross negligence as to amount to a willful exaggeration. *See* Fla. Stat. § 713.31(2)(a). A fraudulent lien may not be enforced; the lienor forfeits his or her right to any lien on the property on which he or she sought to impose the fraudulent lien. *See* Fla. Stat. § 713.31(2)(b). A minor mistake in a claim of

---

[6] *See Fayad,* 899 So. 2d at 1086 ("an 'all-risk' policy is not an 'all loss' policy").

[7] The court notes, however, that the Florida Supreme Court has drawn a similar distinction in *U.S. Fire Ins. Co. v. J.S.U.B. Inc.*, 979 So. 2d 871, 889 (Fla. 2007). "If there is no damage beyond the faulty workmanship or defective work, then there may be no resulting 'property damage.'" *Id*. The insurance provision in *Chelm*, unlike the insurance provision at issue here, required the owner to purchase coverage for "damage resulting from defective design, workmanship or material." *Id.* Thus, the insurance policy in *Chelm* was arguably more likely to convey coverage for defective work.

[8] ECI filed motions to exclude an expert and to strike an affidavit, both offered by Pace to explain the meaning of disputed insurance provisions in the construction contract (*see* docs. 65, 112). The court did not rely on either source in interpreting the contract; accordingly, these two motions are denied as moot.

Case No: 3:08cv345/MCR/EMT

lien, or a good faith dispute as to the amount due, does not amount to a fraudulent lien, however. *See id.*

In this case, Pace argues, and the record amply demonstrates, that ECI willfully included in its lien claims for work not performed and materials not provided. The lien was prepared by Mr. John Morgan, ECI's general manager for the project. It is apparent from Mr. Morgan's deposition testimony that the claim of lien included the full value of several contract work items which were not fully performed, such as erosion control, site water distribution, and the construction of a fence. (*See* doc. 202-3, at 108, 109, 118). Furthermore, the claim of lien included the full value of electrical pumps and control panels which were not only not installed, but not even located on Pace's property at the time the lien was prepared.[9] (*See* doc. 202-3, at 116). ECI does not dispute that the lien included amounts for work not done; rather, it argues under a variety of convoluted contractual theories that Pace was obligated to make payment for the work regardless of whether the work was fully completed.[10] Whether or not Pace has breached the contract is irrelevant to the lien issue. Florida's lien law is not intended as an arm-twisting vehicle for parties locked in a contract dispute. ECI also asserts that the difference in value between the work claimed and the work actually done was minuscule, amounting to a minor mistake. However, ECI's knowing inclusion of claims for work not performed is wholly inconsistent with a minor mistake. *Delta Painting* v. *Baumann*, 710 So. 2d 663, 664 (Fla. 3d. DCA 1998). Florida's lien statute makes no allowance for a "minor" willful exaggeration. *See* Fla. Stat. § 713.31. Thus, Pace has demonstrated the absence of a genuine issue of material fact as to the validity of ECI's lien; it is fraudulent and unenforceable as a matter of law. Accordingly,

1.      ECI's Motion for Summary Judgment (doc. 63) is DENIED.

2.      Pace's Motion for Partial Summary Judgment (doc. 201) is GRANTED.

---

[9] These components were later installed at a cost of $111,344.08 to Pace.

[10] For example, ECI argues that, under the terms of the contract, the architect was required to either issue payment or deny it within seven days of receiving a pay application. Thus, according to ECI, it was entitled to assume Pace had no objection to its pay applications.

Case No: 3:08cv345/MCR/EMT

3.    ECI's Motion to Exclude Expert (doc. 65) is DENIED as moot.

4.    ECI's Motion to Strike Affidavit (doc. 112) is DENIED as moot.

**DONE and ORDERED** this 1st day of February, 2010.


s/ *M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**